[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. FACTS
Sarah B., David B, and Rose of Sharon B., are the children of Linda B., and John B. On April 28, 1998, petitions of alleged neglect were filed by the Department of Children and Families in Superior Court for Juvenile Matters at Danbury on behalf of the abovenamed children. The petitions were amended on July 2, 1998 and October 1, 1998 to reflect that Sarah and David B., were alleged to be uncared for as well. On September 30, 1998, The Department of Children and Families (DCF) invoked an Administrative Hold on Sarah B., placing her into foster care. On October 2, 1998. the Court (Resha, J.) granted an Order of Temporary Custody on behalf of Sarah B. On May 18. 1999 Sarah B., was committed to DCF as a CT Page 5741-ga neglected child. On April 12, 2000, Sarah B., commitment to the Department was extended by the Court (Eveleigh. J.) effective from May 18, 2000 until May 18, 2001. On August 9, 2000, after a contested hearing, the Permanency Plan of TPR was approved and the Court found that it was not appropriate to make reasonable efforts to reunify the child with her parents.
On July 1, 1998, the Department of Children and Families invoked an Administrative Hold on David B., placing him in Foster care. On July 6, 1998 an Order of Temporary Custody was granted on behalf of David B., by the Court (Resha, J.). On May 18, 1999, David B., was committed to DCF as an uncared for child by the Court (Resha, J.).
On September 30, 1998, DCF invoked an Administrative Hold on Rose of Sharon B., placing her into foster care. On October 2, 1998 an Order of Temporary Custody was granted on behalf of Rose of Sharon B., by the Court (Resha, J.). On May 18, 1999, Rose of Sharon B., was committed to DCF as a neglected child by the Court (Resha, J.). On April 12, 2000, the commitment of David B., and Rose of Sharon B., as neglected children was extended, effective May 18, 2000 until May 18, 2001 by the Court (Eveleigh, J.).
On April 12, 2000, the parental rights of Linda B., were terminated by consent, as to David and Rose of Sharon B. The termination petition with respect to respondent mother and her daughter Sarah B., remains pending and was not the subject of the instant trial. On August 9, 2000, after a contested hearing, the Permanency Plan of TPR for all three children was approved. At that time the Court found that it was not appropriate to make reasonable efforts to reunify the children with the parents. The children have remained in foster care since the initial court orders. David B., and Rose of Sharon B., are in a foster home in which the foster parents hope to adopt them. Sara B., is in a separate foster home in which the foster parents hope to adopt her.
John B., was not the custodial parent at the time the petitions were filed. He was allowed to remain silent during the neglect plea. He currently resides in Four Oaks, North Carolina. He has visited with his children sporadically over the last 33 months. He visited them five times in the year 2000. He visited with the children in December 2000 and again in April of 2001, when he came to Connecticut for the trial. He claims that he cannot visit more often due to financial constraints.
On April 26, 2001 the trial was conducted in the above entitled matter. CT Page 5741-gb
II. LAWS
1. There is clear and convincing evidence that DCF has made reasonableefforts to locate the parents.
 Both parents were parties to the proceedings and were represented by counsel.
2. There is clear and convincing evidence that DCF has made reasonableefforts to reunify the children with Mr. B.
Two Interstate Compact studies were performed to explore Mr. B., as a resource for his children. Both studies denied Mr. B., as a resource. He was offered visitation with his children, and phone and letter contact with his children. In addition, two psychological evaluations were performed with recommendations and individual counseling was offered.
3. There is clear and convincing evidence that Mr. B., as the parent ofneglected and uncared children has failed to achieve such degree ofpersonal rehabilitation as would encourage the belief that within areasonable time he could assume a responsible position in his children'slives.
Mr. B. is an inappropriate resource for Sarah, David and Rose of Sharon B. He currently lives in North Carolina and on August 10, 1999, The Johnston County Department of Social Services completed an Interstate Compact study, which reported that placing the children in the home of their father, John B., would be contrary to the safety and well being of the children.
Dr. Rudolfo Rosado, who performed psychological evaluations on Mr. B., recommended therapy for Mr. B., which he did not complete. The Interstate Study further stated that "it does not appear the Mr. B., would be prepared to assume the role of single parent, especially without the counseling and clinical support that has been recommended for him and his children."
On March 3, 2000 another study was performed by the Interstate Compact office addressing Mr. B.'s living conditions and the appropriateness of care for his children. Again, the North Carolina County Department did not recommend Mr. B., as a resource for his children.
On December 12, 2000, Dr. Rosado conducted another psychological CT Page 5741-gc evaluation of Mr. B., and his children. Dr. Rosado again recommended against Mr. B., gaining custody of his children. During his testimony in Court, Dr. Rosado testified that the childrens' need for permanency in this case would outweigh any potential benefit from visitation by the father.
Mr. B., in is not currently involved in any supportive services. He has not changed his circumstances to be a resource for his children. He has refused to relocate to Connecticut so that he could have greater contact with his children. He does not call to inquire how his children are doing. He has written six letters to his children since their commitment to foster care. He has failed to maintain regular visitation with the children. He claims that the cost of travel from North Carolina has prevented him from making regular visits with his children. Yet, his child support payments to his children were specially reduced to allow him to travel monthly to Connecticut. Mr. B.'s contention in this regard strains credulity.
Over the past two years, Mr. B., has not rehabilitated or adjusted his circumstances to become a responsible, viable resource to his children. Mr. B., was aware of the reasons that the Interstate Compact studies did not approve him as a resource for his children. He has had ample opportunity to adjust his circumstances in order to present himself as a viable resource for his children.
4. Termination of Mr. B., parental rights is in the best interests ofthe children by clear and convincing evidence.
A. Timeliness, nature and extent of services.
Mr. B., was provided with two Interstate Compact Studies and two psychological evaluations, individual counseling, phone, letter and visitation contact with his children.
B. The Department had made reasonable efforts to reunite the familypursuant to the Federal Adoption Assistance Act of 1980.
On July 6, 1998, the Court made a finding that reasonable efforts to prevent or eliminate the need for removal of David B. were made by the state. On October 2, 1998, the Court made a finding that reasonable efforts to prevent or eliminate the need for removal of Rose of Sharon B. were made by the state. The Court further finds that reasonable efforts to reunify Sarah B. with her father were made by the state. On August 9, 2000, the Court made a finding that it's no longer appropriate CT Page 5741-gd to make reasonable efforts to reunify the children with the parents.
C. Applicable Court Order Findings
There were no Court-ordered specific steps with respect to Mr. B. as he was allowed to remain silent during the neglect proceedings. He was requested to follow through with the recommendations of Dr. Rosado which he failed to do. He also failed to keep regular visitation with his children.
D. Findings regarding emotional ties of children with father and anyother guardian.
Sarah appears to be very bonded to her foster family. She has expressed a desire to be adopted by her foster parents, whom she calls Mom and Dad. Mr. B. has expressed his love for all of his children.
David appears to have a loving relationship with his foster parents. He does not seek or get much attention from his father during the visits. He recently informed the social worker that he wishes the court would end the case and make a decision, so that he can get on with his life and be adopted by his current foster parents.
Rose of Sharon is doing well in therapy and appears comfortable where she and David are placed. Rose does seek attention from her father but tends to be overshadowed by her father's attention given to her old sister.
E. Findings regarding age of the children.
Sarah B. was born on June, 1991. David B. was born on May, 1992. Rose of Sharon B. was born on November, 1994.
F. Mr. B. has not made the necessary efforts to make it in the bestinterest of the children to return the children to his home in theforeseeable future.
Mr. B.'s home situation has been assessed two times and each time he has been denied as a permanent resource for his children. After two psychological evaluations, the psychologist still recommends against Mr. B. being awarded custody of his children. His visitation has been irregular and he has only seen his children five times in the last year. He has only called on one occasion to inquire as to their well being. He cannot recognize the childrens individual needs and has missed their CT Page 5741-ge birthdays.
G. Mr. B. was not prevented from maintaining a meaningful relationshipby the unreasonable act of any person or by the economic circumstances ofthe parent.
The reduction in Mr. B. child support should have allowed him to visit his children at least once a month. His claims that his car would require a lot of maintenance, did not prevent him from traveling by bus or train. Certainly, there were no economic circumstances that prevented him from calling or sending letters to his children.
Pursuant to C.G.S. 45a-717 (e)(a) the Court finds that the Johnston County Department of Social Services recommended against Mr. John B. as a placement resource for his children on July 21, 1999 and again on August, 2000. On December 14, 2000 Dr. Rosado conducted a second psychological evaluation of Mr. B. and his children and recommended against Mr. B. gaining custody of his children. These findings were uncontroverted by any expert at trial.
Pursuant to C.G.S. 45a-717 (e)(a)(1) the Court finds that Sarah B. requires therapy and is improving with therapy. She wishes to be adopted by her foster parents. David B. is a very likeable child who interacts with his siblings and peers very appropriately on most occasions. Rose of Sharon B. has improved her verbal and language skills in foster care. She continues to be schooled in special education and her current educational plan is meeting her needs. She is doing well in therapy and is comfortable in her foster home. Sarah, David and Rose visit with each other monthly.
III. CONCLUSION
Based upon the foregoing, the Court finds that the statutory grounds for termination exist and the termination is in the best interest of the children by clear and convincing evidence. Sarah, David and Rose of Sharon are in need of permanency and cannot wait any longer for their father to change his life in order to become a resource for his children. The child have expressed a desire to be adopted. Therefore, the Court orders that the parental rights of John B. to Sarah B. David B., and Rose of Sharon B. be terminated and appoints the Commissioner of the Department of Children and Families as Statutory Parent for David B. and Rose of Sharon B.
By The Court
Eveleigh, J. CT Page 5741-gf